**UNITED STATES of America,
Appellee,**

v.

**Michael Anthony TOMEO, Appellant.**

**No. 71–1647.**

United States Court of Appeals,
Tenth Circuit.

May 15, 1972.

Rehearing Denied June 14, 1972.

———◆———

V. G. Seavy, Jr., Denver, Colo. (James G. Johnston, Denver, Colo., on the brief), for appellant.

W. Allen Spurgeon, Asst. U. S. Atty. (James L. Treece, U. S. Atty., and Milton C. Branch, Asst. U. S. Atty., on the brief), for appellee.

Before CLARK*, Associate Justice, and SETH and McWILLIAMS, Circuit Judges.

SETH, Circuit Judge.

This is a direct appeal from a conviction of interstate gambling in violation of 18 U.S.C. § 1084(a).

The evidence shows that the appellant was actively engaged in bookmaking in Colorado. Mr. Huber, the Government's only witness to testify as to the interstate character of the offense, is a Wisconsin businessman who had met appellant in Denver. The appellant provided Mr. Huber with his phone number and explained that if Huber wished to place a bet he should call the appellant in Denver. At one point the phone number was changed. Huber placed two or three calls a week during two successive football seasons, calling early in the week to get the odds, and calling back on Saturday or Sunday to place his bets.

* Associate Justice of the United States Supreme Court, Retired, sitting by designation.

He testified he did not place straight bets but parlayed three or four teams with the Doyle system, which he could not bet elsewhere. Nearly all of the calls were placed from Monroe, Wisconsin, to Denver, Colorado, and the witness talked to Mr. Tomeo personally. The witness Huber testified he came to Denver from time to time, saw Mr. Tomeo socially, and had discussed the possibility of Mr. Tomeo being a representative of Mr. Huber's business. The two had been acquainted since 1963 or 1964.

There is no question that the appellant was engaged in the business of betting and wagering; the question is whether appellant's acts constituted a crime within the meaning of the statute under which he was charged. 18 U.S.C. § 1084(a) reads:

> "Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate . . . commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event . . . , or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both."

As to the actual placing of bets, appellant argues that the word "transmission" in the statute means sending and not receiving, and it is pointed out that appellant only received the bets, Huber having placed them. With regard to the transmission of odds, appellant argues that the indictment charges transmission "from Monroe, Wisconsin, to Denver and Adams County, Colorado," and it is urged that it would have been physically impossible under the charge for the Denver-based appellant to have transmitted the information.

At present the Circuits do not agree on the meaning and scope of section 1084(a). In Telephone News System, Inc. v. Illinois Bell Telephone Co., 220 F.Supp. 621 (N.D.Ill.1963), aff'd 376 U. S. 782, 84 S.Ct. 1134, 12 L.Ed.2d 83, a case involving recorded horse racing information to anyone calling a particular number, a three-judge court rejected a Government contention that the word "transmission" means receiving as well as sending. The court there held that Congress there meant to use the term "transmission" as sending only, because in other subsections the term "transmission or receiving" was used. Hence both words would have here been used if Congress had intended sending as well as receiving. In a case involving the receipt of ticker tape transmissions, the Seventh Circuit adopted the same construction. United States v. Stonehouse, 452 F.2d 455 (7th Cir. 1971).

The Government's position received approval in Sagansky v. United States, 358 F.2d 195 (1st Cir. 1066), cert. denied 385 U.S. 816, 87 S.Ct. 36, 17 L.Ed. 2d 55. The court there said:

> "The gist of this contention is that the offense is committed by the one who initially sends in the bet and not by the one who receives it; in other words, the meaning of 'transmission' as used in this statute does not embrace the act of receiving. While this might be a proper construction of the term 'transmission' taken out of context, § 1084(a) does not punish the mere transmission of bets or wagers, but rather the 'use' of interstate wire communication facilities for their transmission. When a person holds himself out as being willing to make bets or wagers over interstate telephone facilities, and does in fact accept offers of bets or wagers over the telephone as part of his business, we think it is consistent with both the language and the purpose of the statute to hold that he has 'used' the facility for the transmission of bets or wagers."

The differing results also arise from a different construction of the words "to

use" the communication facility. As it pertains here, section 1084(a) proscribes *the use* of the telephone for the "transmission" in interstate commerce of bets or wagers or information assisting in the placing of bets or wagers. The conclusion in Telephone News that transmission means sending and not receiving is necessarily predicated on the notion that "use" connotes only the idea of immediate utilization, or single event, that is, the phone is used by the person who picks it up and places the particular call. In Sagansky, on the other hand, the concept of "use" is more encompassing; there it was concluded that the "use" of a wire facility contemplates the broader notion of converting the facility to one's service, that is, customarily employing or making a practice of availing oneself of the facility. In our opinion, an unsophisticated and practical reading of the statute compels the latter interpretation. In reaching this conclusion, we give consideration, as did the court in Stonehouse, to the fact that the telephone is designed for a two-way conversation and exchange of information. If we were to accept the appellant's contention, we would effectively deny that any discussion or exchange took place, and we find that assumption rather strained. We also note that an interpretation of use of the wire facility which is limited to the isolated *sending* of messages does not meet the basic purpose of the statute and renders its scope more limited than an everyday experience with the telephone would dictate. The statute deals with bookmakers—persons "engaged in the business of betting or wagering." Bookies *take* bets, they receive them, they handle them; it is a transaction requiring mutuality or a meeting of minds. It is unlikely in framing section 1084(a) that Congress considered betting transactions to move in but one direction in the use of the telephone.

We have considered appellant's remaining arguments and find them to be without merit.

Affirmed.