**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Martin SKLAROFF and Jesse Sklaroff,
Defendants-Appellants.**

**UNITED STATES of America,
Plaintiff-Appellee,**

**v.**

**Martin SKLAROFF, Jesse Sklaroff, and
Barney Tillman Berry,
Defendants-Appellants.**

Nos. 71–2948, 71–3192.

United States Court of Appeals,
Fifth Circuit.

Jan. 17, 1975.

Rehearing Denied March 4, 1975.

838

James J. Hogan, Alan E. Weinstein, Miami Beach, Fla., for defendants-appellants, Sklaroff.

Victoria D. Little, Decatur, Ga., for defendant-appellant Berry.

John W. Stokes, U. S. Atty., J. Robert Sparks, Atlanta, Ga., Marilu Marshall, Miami, Fla., John J. Robinson, Crim. Div., Appellate Section, Dept. of Justice,

Washington, D. C., for plaintiff-appellee United States.

Before WISDOM and BELL, Circuit Judges, BREWSTER, District Judge.

BELL, Circuit Judge:

Defendants Martin and Jesse Sklaroff were convicted in the Southern District of Florida on charges of violating 18 U.S.C.A. § 1084.[1] They were also convicted in the Northern District of Georgia, along with defendant Berry, of conspiring to violate § 1084, and on substantive counts charging violations of § 1084.

The essence of the charges was the business of bookmaking and the use of the telephone by the Sklaroffs to transmit information assisting in the placing of bets and wagers to Berry and a co-defendant Dudley in Atlanta, and to others in cities outside Florida. (Dudley later pleaded guilty.) The appeals from these convictions were consolidated and we now affirm the convictions.

There are some assignments of error common to the three defendants. These center on telephone conversations intercepted by wiretaps. The sufficiency of the evidence is also drawn into the question by all defendants. In addition, Berry claims error with respect to the issuance of a search warrant, the court's charge on the question of voice identification, and the court's construction of § 1084 to include the recipient of information by transmission which assists in placing bets and wagers.

■ Assuming the admissibility of the evidence procured by and through the wire interceptions, to be discussed hereinafter, there is no merit whatever in the contention that the evidence was insufficient to warrant the convictions of the defendants. We also find no error with respect to the issuance of the warrant to search Berry's business premises in Atlanta. See United States v. Ventresca, 1965, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684. After objection by Berry's counsel, the trial court corrected its charge as to the issue of voice identification and we hold that any possible prejudice to Berry was obviated by the corrected charge.

■ There is no merit in the contention that § 1084 does not include the recipient of information in the bookmaking business which assists in the placing of bets and wagers. Berry relies on United States v. Stonehouse, 7 Cir., 1971, 452 F.2d 455 but see United States v. Sellers, 5 Cir., 1973, 483 F.2d 37, where we aligned our court with Sagansky v. United States, 1 Cir., 1966, 358 F.2d 195; and Tomeo v. United States, 10 Cir., 1972, 459 F.2d 445, in holding that the statute embraces the recipient in the transmission process.

The central questions presented are in connection with wire interceptions. United States District Judge W. O. Mehrtens authorized FBI agents to intercept telephone conversations between the Sklaroffs and others originating from four specified pay telephones located in the public area of the Miami International Airport. The interceptions were authorized for a period of seven days from the date of the order.

These telephones were allegedly being used by the Sklaroffs for the transmission in interstate commerce of bets and wagers, and of information assisting in the placing of bets and wagers in violation of 18 U.S.C.A. § 1084. In addition

---

1. *§ 1084. Transmission of wagering information; penalties*

(a) Whoever being engaged in the business of betting or wagering knowingly uses a wire communication facility for the transmission in interstate or foreign commerce of bets or wagers or information assisting in the placing of bets or wagers on any sporting event or contest, or for the transmission of a wire communication which entitles the recipient to receive money or credit as a result of bets or wagers, or for information assisting in the placing of bets or wagers, shall be fined not more than $10,000 or imprisoned not more than two years, or both.

to intercepting the conversations, one FBI agent was concealed in a refrigerator crate near the four telephone booths, and was able to take motion pictures of the Sklaroffs from that vantage point. There is little dispute in the proof as to use of the telephones by the Sklaroffs and the times involved. Many calls were intercepted and some of these led to Berry and Dudley in Atlanta.

■ It is first urged that Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C.A. §§ 2510–2520, is unconstitutional. The argument for unconstitutionality is that (1) wire interceptions authorized by the Act are so inherently broad and the intrusions allowed so indiscriminate as to necessarily violate the Fourth Amendment; (2) an order authorizing the interception of wire communications is for the purpose of obtaining testimonial evidence of crimes and therefore violates the Fourth and Fifth Amendments; (3) the interceptions authorized by the Act violate First Amendment rights of free speech; (4) the interceptions authorized constitute a search and thus a defendant is entitled to notice prior to entry, and (5) the Act is unconstitutional in that it authorizes interceptions without probable cause being established. Taken together, it is said that it is impossible to have a constitutionally valid statute authorizing wire interceptions.

The arguments made in support of the claim that the statute is unconstitutional have been addressed by one or more of our sister circuits and, without exception, they have upheld the constitutionality of the Act. See e. g., United States v. Tortorello, 2 Cir., 1973, 480 F.2d 764; United States v. Cafero, 3 Cir., 1973, 473 F.2d 489; United States v. Bobo, 4 Cir., 1973, 477 F.2d 974; United States v. Cox, 8 Cir., 1972, 462 F.2d 1293; Cox v. United States, 10 Cir., 1971, 449 F.2d 679. One teaching of Berger v. New York, 1967, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040; and Katz v. United States, 1967, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, is that a statute permitting wire interceptions under narrow restrictions and carefully circumscribed conditions may be constitutional. We join in holding that Title III, §§ 2510–2520, meets the test of *Berger* and *Katz.*

The defendants also urge that the procedures used in obtaining the interception order were deficient; that the order itself was legally insufficient; and that the government failed to comply with the requirements of the order once it was obtained.

■ One alleged defect or deficiency in the application for the order is said to lie in the fact of an error in one digit in one telephone number, and in exchange number 691 being stated as 961 as to another of the four telephone numbers. This argument is made in the face of a clear description of the four telephones including a diagram of their location. This is no more than a clerical error and is entirely without substance.

■ We likewise find no deficiency from the standpoint of probable cause, particularity as to description of the conversations to be intercepted, or the duration of the intrusion. The Act also requires a showing of need for the interceptions and that other investigative procedures appear to be unlikely to succeed. We find that this requirement was met.

■■ The assertion that the government violated § 2518(8)(a) by failing to deliver immediately the recordings of the interceptions to the judge issuing the interception order at the end of the period of the order, is without merit. There was a delay of fourteen days. There was no showing of prejudice to the defendants in the delay. The purpose of this provision of the statute is to safeguard the recordings from editing or alteration. There was no showing that the integrity of the interceptions was in any way violated. The government accounted for the delay by showing that the recordings remained in the FBI evidence room for seven days and that the additional seven days were used in the preparation of search warrants.

Indeed, we have carefully considered the facts obtaining to the interceptions from beginning to end in light of the requirements of § 2518. There was substantial compliance with the requirements on the part of the government and the authorizing judge.

■ The last question to be considered is the claim that the application for the interception order was not authorized in accordance with 18 U.S.C.A. § 2516(1). It was represented to the issuing judge that the application had been authorized by Assistant Attorney General Wilson. It developed that it was authorized by the Attorney General. This circumstance did not invalidate the subsequent order authorizing the interceptions. Nor was it invalidated by the failure to advise the issuing judge that Deputy Assistant Attorney General Petersen, in an authorized ministerial act, had signed Wilson's name. United States v. Chavez, 1974, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380. See also United States v. Bobo, supra, 477 F.2d at 984; United States v. Cox, supra, 462 F.2d at 1297–1300.

We have carefully considered every assignment of error. The appeals are without merit.

Affirmed.