UNITED STATES of America,
Plaintiff-Appellee,

v.

Anthony Paul DIADONE, John Eli Stone, Richard Carl Biggs, Reuben Goldstein, and John Denton Ritter, Defendants-Appellants.

UNITED STATES of America,
Plaintiff-Appellee,

v.

James William "Puny" WINNINGHAM,
Defendant-Appellant.

Nos. 75–2991, 75–3222.

United States Court of Appeals,
Fifth Circuit.

Sept. 1, 1977.

Rehearing and Rehearing En Banc
Denied Oct. 14, 1977.

L. W. Westerlage (Court-appointed), Dallas, Tex., for Diadone.

Lester L. May, Kenneth Herridge, Dallas, Tex., for Stone & Biggs.

Douglas G. Crosby, Stephen Stein, Las Vegas, Nev., for Goldstein.

Cecil Emerson, Robert T. Baskett, Dallas, Tex., for Ritter.

Frank D. McCown, U. S. Atty., Fort Worth, Tex., Judith A. Shepherd, Charles D. Cabaniss, Robert C. Prather, Asst. U. S. Attys., Dallas, Tex., for plaintiffs-appellees.

Warren E. Burnett, Richard J. Clarkson, Odessa, Tex., for Winningham.

Before TUTTLE, THORNBERRY and TJOFLAT, Circuit Judges.

THORNBERRY, Circuit Judge:

Appellants, defendants below, stand convicted of (1) conducting an illegal gambling business in violation of 18 U.S.C. § 1955, and (2) using wire communications in interstate commerce to engage in the business of betting or wagering in violation of 18 U.S.C. § 1084.[1] Much of the evidence was stipulated, and most of it emerged through wiretaps placed on defendant Stone's telephone and on two public pay telephones in defendant Stone's restaurant. The government claimed authority for the tap under an order issued by Judge Taylor of the Northern District of Texas. The defendants moved to suppress the evidence intercepted through these taps, as well as all evidence obtained by reason of the interceptions. The trial court denied the motion, and the case proceeded to trial and conviction.

Defendants raise a total of twelve issues on appeal. Most of these issues concern the admissibility of the evidence intercepted through the wiretaps. Some defendants raise additional claims unconnected to the wiretap order. The defendants' arguments on these issues do not merit reversal of the convictions. We affirm the district court as to all defendants.

I.

All of the defendants contend that the trial court erred in refusing to suppress the contents of intercepted oral communications because the order authorizing interception was not dated at the time it was signed by the district court. In essence, defendants urge that since the order authorizing the wiretapping was not dated when it was signed, the interception was authorized for a period of time unlimited by the order. This is impermissible under 18 U.S.C. § 2518(4)(e), and *Berger v. New York,* 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1040 (1967). After a hearing where Harold Jaquet, former Assistant United States Attorney in charge of investigation in this case, and FBI Special Agent Bryant testified that Judge Taylor signed the order authorizing the interception of wire communications on November 20, 1973, the order was amended *nunc pro tunc* pursuant to F.R.Crim.P. 36. Rule 36 allows the correction of "clerical mistakes in judgments, orders or other parts of the record and errors in the record arising from oversight or omission."

Defendants rely primarily upon a Sixth Circuit case, *United States v. Lamonge,* 458 F.2d 197 (6 Cir. 1972), *cert. denied,* 409 U.S. 863, 93 S.Ct. 153, 34 L.Ed.2d 110 (1972). *Lamonge* held that the absence of a date on a wiretap order makes the duration of the order unlimited, thereby invalidating the order. The addition of a date *nunc pro tunc* did not save the order—it was facially invalid and the evidence obtained under it should have been suppressed.

The instant case differs from *Lamonge* in at least one important respect. The order in *Lamonge* had no date stamped on it, while the order in this case was received by the district court clerk shortly after it was signed by Judge Taylor, and was stamp-dated by the clerk November 20, 1973.

In view of the fact that the order authorizing interception in this case was

---

1. Not all of the defendants were convicted of both of these crimes. All defendants except Biggs were convicted of violating § 1084. Defendants Stone and Biggs were also convicted of violating § 1955.

dated when it was received by the district court clerk on the same day that it was signed by Judge Taylor, we hold that the failure to date the order at the time it was signed by Judge Taylor was a clerical mistake that could be corrected under Rule 36. To the extent which this result departs from that reached by the Sixth Circuit in *Lamonge,* we decline to follow the Sixth Circuit's path.

## II.

Defendants Stone, Biggs, and Goldstein contend that the trial court erred in denying the motion to suppress because the order authorizing the interception was based upon an insufficient application and affidavit. The controlling statute, 18 U.S.C. § 2518(1)(c), requires every application for a wiretap or interception order to contain, *inter alia,* "a full and complete statement as to whether or not other investigative procedures have been tried and failed or why they reasonably appear to be unlikely to succeed if tried or to be too dangerous." The claimed defect in this case is that the affidavit did not contain such a full and complete statement.

■ The purpose of the "full and complete statement" requirement, as expressed by cases decided by our Circuit, is to inform the issuing judge of the difficulties involved in the use of the conventional techniques, rather than to establish that every other imaginable mode of investigation would be unsuccessful. *United States v. Pacheco,* 489 F.2d 554 (5 Cir. 1974), *cert. denied,* 421 U.S. 909, 95 S.Ct. 1558, 43 L.Ed.2d 774 (1975). The test for sufficiency of the statement of facts directs the court to take a common sense view of the statement. *United States v. Robertson,* 504 F.2d 289 (5 Cir. 1974), *cert. denied,* 421 U.S. 913, 95 S.Ct. 1568, 43 L.Ed.2d 778 (1975).

■ Agent Bryant's thirteen page affidavit supporting the application sets forth the details of the gambling operation as related to various agents by six confidential informants. The affidavit asserted that conventional surveillance techniques had proven and were likely to be ineffective because most of the gambling activity transpired over the telephone. A search of defendants' residences would likely be ineffective, asserts affiant, because gambling operations frequently maintain only temporary records which often are in cypher. Furthermore, during raids to seize such records, gambling operators frequently destroy what records they have. Finally, affiant asserts that the government's informers will not testify at trial because of fear for their safety.

We have held a similar statement of facts sufficient to justify the grant of an interception order. *See United States v. McCoy,* 539 F.2d 1050 (5 Cir. 1976) (*McCoy II* ). In *McCoy II,* we stated:

[T]he possibility that wiretaps may almost always be approved in similar bookmaking cases does not make "formalities" of §§ 2518(1)(c) and (3)(c). The application must still contain the "full and complete statement". The decision whether to order a wiretap is then to be made by the district court exercising its discretion. *See United States v. Smith,* [9 Cir.] 519 F.2d [516] at 518. That court, in an effort to make the § 2518(3)(c) finding, "may require the applicant to furnish additional testimony or documentary evidence in support of the application". 18 U.S.C. § 2518(2). In the absence of additional evidence a wiretap order might well be denied. We do not, therefore, judicially abrogate §§ 2518(1)(c) and (3)(c) with respect to § 1955 investigations. We simply hold that the district court's discretion was exercised here upon sufficient factual representations.

539 F.2d at 1056.

The instant statement, when considered with the facts averred, likewise satisfies the relevant standards.

## III.

■ Defendants Stone and Biggs argue that the trial court erred in refusing to suppress the intercepted communications because the application to Judge Taylor did not have proper authorization. 18 U.S.C.

§ 2516(1) permits application for an interception order only upon the authorization of the Attorney General or an Assistant Attorney General specially designated by the Attorney General. The authorization in this case was executed by Assistant Attorney General Henry Petersen. He issued the authorization under power delegated to him by *Acting* Attorney General Robert H. Bork. Bork, goes the defendants' argument, was not an Attorney General and therefore could not authorize the application and could not delegate the power to do so.

We have previously held that in such matters Acting Attorney General Bork stood in the shoes of the Attorney General and possessed the powers of the Attorney General. *See United States v. McCoy*, 539 F.2d 1050, 1054 (5 Cir. 1976) (*McCoy II*); *United States v. McCoy*, 515 F.2d 962, 963 (5 Cir. 1975), *cert. denied*, 423 U.S. 1059, 96 S.Ct. 795, 46 L.Ed.2d 649 (1976) (*McCoy I*). *See also United States v. Pellicci*, 504 F.2d 1106, 1107 (1 Cir. 1974), *cert. denied*, 419 U.S. 1122, 95 S.Ct. 805, 42 L.Ed.2d 821 (1975): "There is no basis for concluding that one 'acting' as Attorney General has fewer than all the powers of that office." This asserted deficiency in the authorization does not doom the interception order.

## IV.

■ Defendants Stone, Biggs, Winningham, and Goldstein contend that the interception of wire communications was not made in conformity with the order of authorization signed by Judge Taylor. As to the pay telephones in the restaurant, the order restricted monitoring to those times when Stone was in the restaurant and permitted interception of only those calls to which Stone was a party. Defendants argue that the wiretap evidence in question should have been suppressed because of approximately 92 violations of these aspects of Judge Taylor's order, and because Judge Taylor was not told of all the unauthorized interceptions during the court of the wiretaps.

In *United States v. Doolittle*, 507 F.2d 1368 (5 Cir. 1975), *en banc*, 518 F.2d 500 (5 Cir. 1975), *cert. dismissed as to petitioner Baxter*, 423 U.S. 1008, 96 S.Ct. 439, 46 L.Ed.2d 380 (1975), *cert. denied sub nom. Anderson v. United States*, 430 U.S. 905, 97 S.Ct. 1172, 51 L.Ed.2d 580 (1977), *sub nom. Malloway v. United States*, 430 U.S. 905, 97 S.Ct. 1173, 51 L.Ed.2d 580 (1977), *sub nom. Doolittle v. United States, id.*, this court also confronted an attack upon the scope of the interceptions authorized by court order. "There is no question that some irrelevant and personal portions of gambling conversations were intercepted or that certain nonpertinent conversations were intercepted. But this is inherent in the type of interception authorized by Title III, and we do not view the simple inclusion of such conversations, without more, as vitiating an otherwise valid wiretap." 507 F.2d at 1372. So long as the monitoring agent listened to each call only long enough to determine whether it dealt with the subject matter of the district court's order, the interception of irrelevant conversations would not render all of the intercepted conversations inadmissible. *See United States v. Armocida*, 515 F.2d 29 (3 Cir.), *cert. denied*, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 84 (1975).

In the hearing on defendants' motion to suppress, Mr. Jaquet, the Assistant United States Attorney in charge of the interception, testified that as to the taps on the pay telephones: (1) sometimes, there was difficulty in determining whether Stone was in the restaurant and, in fact, Stone left the premises on several occasions without being observed; (2) the monitored telephones were located in places not well suited for surveillance; (3) monitoring agents encountered unexpected difficulty in identifying Stone's voice; and (4) the complications experienced by the agents were communicated to Judge Taylor in written and oral reports submitted at the end of each five-day segment of the period of interception, as per the interception order.

In view of the foregoing factors related by Mr. Jaquet and the fact that most of the unauthorized interceptions occurred while

voice identification was being made, the district court acted properly in denying defendants' motion to suppress on this ground.

V.

■ Defendants Stone and Biggs contend that the district court erred in refusing to grant their motion to suppress because the tape recordings of intercepted conversations were not taken to Judge Taylor immediately upon the expiration of the authorized interception period. The government bears a duty to surrender the tapes to the court immediately upon completion of the interception period. 18 U.S.C. § 2518(8)(a). The tapes were not taken to Judge Taylor until about two weeks after the order expired.

The government relies upon *United States v. Sklaroff,* 506 F.2d 837, 840 (5 Cir. 1975), *cert. denied,* 423 U.S. 874, 96 S.Ct. 142, 46 L.Ed.2d 105 (1975) (*Sklaroff I*), where this court held that a fourteen day delay did not amount to a violation of § 2518(8)(a) where there was no showing of prejudice to the defendants and the government accounted for the delay. The defendants have not shown that they were prejudiced by the delay or that the integrity of the interceptions was in any way disturbed. There was no error in refusing to suppress the evidence on this basis.

VI.

■ Defendant Goldstein argues that the government failed to serve him with a notice of inventory as required by § 2518(8)(d).

The interception period was in November and December of 1973. According to the government, Goldstein's voice was identified in April or May of 1974; Goldstein's attorney was told during August of 1974 that Goldstein had been overheard, and Goldstein was compelled to appear before the grand jury in Dallas during that same month. An additional inventory notice was mailed to Goldstein on April 7, 1975. The hearing on defendants' motion to suppress did not occur until June 6, 1975.

Section 2518(8)(d) provides that within ninety days after the termination of the authorized interception period, the issuing judge "shall cause to be served, on the persons named in the order . . ., and such other parties to intercepted communications as the judge may determine in his discretion that it is in the interest of justice" an inventory notice, informing these persons of the existence and dates of the interception. The statute does not require that inventory notice be sent to persons not named in the order. The judge acts in his discretion. *United States v. Donovan,* 429 U.S. 413, 97 S.Ct. 658, 669, 50 L.Ed.2d 652 (1976).

Since Goldstein was not named in the order,[2] the judge was not required to send him inventory notice under § 2518(8)(d). Still, Goldstein actually received the equivalent of inventory notice ten months before the hearing on the motion to suppress. The district court committed no error when it denied this claim in the motion to suppress.

VII.

Defendant Ritter contends that the wiretap evidence should have been suppressed as to him because he was known to be involved in the gambling transactions in question, but was not named in the application for the wiretaps.

■ If the government has probable cause to believe that an individual is engaged in the criminal activity under investigation and expects to intercept that individual's conversations over the tapped telephones, his name must be included in the application to intercept. *United States v. Donovan,* 429 U.S. at 427–428, 97 S.Ct. at 668, 50 L.Ed.2d at 667–668.

Although Ritter was a known gambler, the government contends that he was not

---

**2.** We do not understand Goldstein to argue that his name should have been included in the application and order.

known to be involved in the gambling operation being investigated, and that his voice was not identified until December 4, 1973 (the date of the termination of the authorized interception period). After it was discovered that Ritter was involved, a notice of inventory was sent to him on February 11, 1974.

■ Even if the application should have contained Ritters' name, the failure to do so does not compel suppression of the interceptions. *United States v. Donovan,* 429 U.S. at 435–437, 97 S.Ct. at 672–73, 50 L.Ed.2d at 672–673; *United States v. Alfonso,* 552 F.2d 605 (5 Cir. 1977); *United States v. Sklaroff,* 552 F.2d 1156 (5 Cir. 1977) (*Sklaroff II*).

### VIII.

Defendant Ritter also argues that the order authorizing the installation of pen register devices was defective because it contained errors in the digits of the telephone listed.

One of the numbers listed in the pen register order is 358–0996. The order authorizes installation of pen registers on certain numbers, including 384–0996. Agent Bryant's affidavit correctly identifies the number as 368–0996.

The government states that the variance is immaterial, citing *United States v. Doolittle, supra,* and *United States v. Sklaroff, supra (Sklaroff I).* In *Sklaroff I,* the court found that an error in one digit in one telephone number, and the transposition of two digits in an exchange number (691, stated as 961), were clerical errors and presented no ground for suppression. 506 F.2d at 840. Similarly, the court in *Doolittle* held that one incorrect digit in one of four telephone numbers was an immaterial variation from the actual number which did not warrant reversal of the district court's decision. 507 F.2d at 1371.

■ The application for interception, the order authorizing interception, and Bryant's affidavit all contained the correct number, 368–0996. Therefore, we hold that the errors in the order to install pen regis-

ters were clerical. The district court properly denied Ritter's motion to suppress.

### IX.

■ Defendant Goldstein argues that the provisions of 18 U.S.C. §§ 2510–2520, which permit wiretapping and electronic surveillance, contravene the First, Fourth, Fifth, and Sixth Amendments to the Constitution.

This argument has no merit. We have twice held that the challenged statutes do not contravene these constitutional safeguards. *United States v. Sklaroff (Sklaroff I),* 506 F.2d at 840; *United States v. Doolittle,* 507 F.2d at 1370.

### X.

Defendants Stone and Biggs contend that the trial court did not find five or more persons who conducted, financed, managed, supervised, directed, or owned all or part of the alleged illegal gambling business, as required for a violation of 18 U.S.C. § 1955.

According to *United States v. Bridges,* 493 F.2d 918, 921 (5 Cir. 1974), "almost anyone who works in the gambling enterprise counts towards making up the minimum five. . . ." *See also United States v. Ciamacco,* 362 F.Supp. 107, 111 (W.D.Pa.1973): "It is well established that all participants in the operation of an illegal gambling business, except customers placing bets, are conducting that business for purposes of § 1955. . . ."

■ On page 405 of the Record, the district court stated in the "Findings by the Court on Stipulations of Evidence" that Stone was involved in an illegal gambling business in which five or more persons shared responsibilities. A similar finding with regard to Biggs is found on page 408 of the Record. There is no challenge to the evidentiary support for these findings. The district court's findings satisfy § 1955.

### XI.

Stone and Biggs further contend that Count One of the indictment should have

been dismissed because it alleged that these defendants "owned" all or part of the gambling business, whereas the government stated in its response to defendants' Motion for a Bill of Particulars that the owners of the alleged illegal gambling business were unknown.

■ This argument has no merit. Although the government's response to item 18(d) of the Motion for a Bill of Particulars states that the names and addresses of all owners were unknown, it continues to say that the names and addresses of the owners probably include the names listed in 18B as participants. Stone and Biggs were listed in 18B. By including the words "and owners" in the indictment the government was merely stating another way that Stone and Biggs could be in violation of § 1955, and that it was not incumbent upon the government to prove that they were the "owners." It was only necessary that Stone and Biggs participated in the gambling operations in one of the ways listed in the indictment.

## XII.

The final argument raised by defendants Stone and Biggs is that there is insufficient evidence to support their convictions. Defendant Biggs contends that the evidence reflects that he was a bettor and not a bookmaker. Both Stone and Biggs assert that the evidence in the record is insufficient to support their convictions because certain stipulations of evidence were never formally admitted into evidence.

■ Stipulation of Evidence Number 1 states that Biggs relayed line (or odds) information to Stone, and that Biggs and Stone instructed one another to place bets on certain games. This evidence indicates that Biggs was not merely a bettor, but was actually a participant in the operation. *See United States v. Milton,* 555 F.2d 1198 (5 Cir., 1977).

Likewise, the record reflects that the stipulations in question were admitted into evidence. R. Vol. VII at 33–37. There is no error here.

Accordingly, the judgment of the district court is, in all respects,

AFFIRMED.