(No. 55681.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. AMERICO NIEVES, Appellee.

*Opinion filed October 22, 1982.*

Tyrone C. Fahner, Attorney General, of Springfield, and Edward F. Petka, State's Attorney, of Joliet (Herbert Lee Caplan, Melbourne A. Noel, Jr., Thomas E. Holum, Kenneth A. Fedinets, and Marcia L. Friedl, Assistant Attorneys General, of Chicago, and John X. Breslin and Kenneth A. Wilhelm, of the State's Attorneys Appellate Service Commission, of Ottawa, of counsel), for the People.

Robert Agostinelli and Stephen H. Omolecki, of the Office of the State Appellate Defender, of Ottawa, for appellee.

JUSTICE MORAN delivered the opinion of the court:

Following a jury trial in the circuit court of Will County, Americo Nieves was convicted of the unlawful delivery of more than 15 grams of a substance containing heroin and sentenced to 30 years in prison. The appellate court held that the admission into evidence of tape-recorded phone conversations was error, due to the State's failure to comply with section 108A—7(b) of the Code of Criminal Procedure of 1963 (Code) (Ill. Rev. Stat. 1977, ch. 38, par. 108A—7(b)). The court, therefore, reversed defendant's conviction and remanded the cause for a new trial. (99 Ill. App. 3d 447.) We granted leave to appeal.

The issues are: (1) Was suppression of recorded conversations between an undercover officer and defendant required by article 108A of the Code (Ill. Rev. Stat. 1977, ch. 38, pars. 108A—1 to 108A—11)? (2) Did defendant knowingly waive his right to counsel in the absence of a proper admonishment?

The facts are uncontroverted. On January 12, 1978, the trial court granted the State's request for an order allowing the use of an eavesdropping device pursuant to article 108A. The order permitted eavesdropping from 6 p.m., January 12, to 6 p.m., January 22, 1978. On January 12, the consenting party to the eavesdrop, undercover narcotics officer Joseph Andalina, tape recorded a telephone conversation with defendant relating to a purchase of five to eight ounces of heroin. Andalina also recorded a telephone conversation with defendant at noon on the following day, at which time they agreed to a delivery at 3 p.m. that day. At approximately 4:30 p.m., defendant arrived at a prearranged parking lot and delivered several plastic bags of a brown powder, for which the officer paid defendant $1,300 in marked currency. Defendant was arrested at the scene by other officers who also recovered approximately 99.5 grams of addi-

tional heroin in bags found near a garbage can.

Prior to trial, defendant filed a motion to suppress the recordings of the telephone conversations. At the hearing on the motion, the State stipulated to the facts contained in the first five paragraphs of defendant's motion, which were as follows:

"1. That the Illinois Revised Statutes, Chapter 38, Section 108A—7(b) states that immediately after the expiration of the period of an Order allowing eavesdropping all recordings shall be made available to the Judge issuing the order.

2. That the Order issued by Judge Robert Buchar on January 12, 1978 allowed eavesdropping from that date until January 22, 1978.

3. That the recordings made pursuant to said order were not *immediately* made available to Judge Buchar and in fact were not reviewed by him until February 8, 1978.

4. That the passage of 16 days from the termination of the date of the order of January 12, 1978 is a period of time of such duration as to fall outside of the immediacy requirement of Chapter 38, Section 108A—7(b).

5. That the order entered January 12, 1978 by Judge Robert Buchar was improperly granted and that it contains no specific statements as to whether or not the use shall automatically terminate when the described conversations have been first obtained as is required under Chapter 38, Section 108A—5(a)(3)."

Also at the hearing, Andalina testified that only the conversations of January 12 and 13, 1978, were recorded, and that the eavesdrop was discontinued after the second day of the 10-day authorized period. Andalina also testified that he retained custody of the tape recordings from January 13 to the time they were turned over to the State's Attorney's office and to Judge Buchar. On February 8, the recordings were brought before the trial judge for review and sealing. The trial court denied the motion to suppress and, at trial, the tapes were admitted into evidence and played to the jury.

The State argues that where, as here, the tapes were judicially sealed 16 days after expiration of the order, article 108A does not require the tapes to be suppressed. Defendant argues that the State's admitted failure to "immediately" turn over the tapes for sealing under section 108A—7(b) prevents disclosure of the recordings.

Section 108A—7 provides:

"Retention and Review of Recordings.

(a) The contents of any conversation overheard by any eavesdropping device shall, if possible, be recorded on tape or a comparable device. The recording of the contents of a conversation under this Article shall be done in such a way as will protect the recording from editing or other alterations.

(b) Immediately after the expiration of the period of the order or extension or, where the recording was made in an emergency situation as defined in Section 108A—6, at the time of the request for approval subsequent to the emergency, all such recordings shall be made available to the judge issuing the order or hearing the application for approval of an emergency application.

The judge shall listen to the tapes, determine if the conversations thereon are within his order or were appropriately made in emergency situations, and make a record of such determination to be retained with the tapes.

The recordings shall be sealed under the instructions of the judge and custody shall be where he orders. Such recordings shall not be destroyed except upon order of the judge hearing the application and in any event shall be kept for 10 years if not destroyed upon his order.

Duplicate recordings may be made for any use or disclosure authorized by this Article. The presence of the seal provided for in this Section or a satisfactory explanation for the absence thereof shall be a pre-requisite for the use or disclosure of the contents of the recordings or any evidence derived therefrom." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—7.)

Section 108A—9 provides:

"Motion to Suppress Contents of Recording, etc.

(a) Any aggrieved person in any judicial or administra-

tive proceeding may move to suppress the contents of any recorded conversation or evidence derived therefrom on the grounds that:

(1) the conversation was unlawfully overheard and recorded;

(2) the order of authorization or approval under which the device was used or a recording made was improperly granted; or

(3) the recording or interception was not made in conformity with the order of authorization." (Ill. Rev. Stat. 1977, ch. 38, par. 108A—9.)

The State contends that the failure to "immediately" turn over the tapes to the issuing judge under section 108A—7(b) does not require suppression under section 108A—9. Thus, although the State concedes it failed to adhere to the immediacy requirement, it argues that, in this case, the 16-day delay following expiration of the order was a "technical violation" that did not merit suppression.

This issue has not been addressed previously by this court. However, the effect of failure to adhere to the immediacy requirement of the similarly worded Federal counterpart to the Illinois act has been the subject of considerable analysis in the Federal circuit courts of appeal. Section 2518(8)(a) in title III of the Omnibus Crime Control and Safe Streets Act of 1968 (18 U.S.C. sec. 2518(8)(a) (1976)) provides:

"The contents of any wire or oral communication intercepted by any means authorized by this chapter shall, if possible, be recorded on tape or wire or other comparable device. The recording of the contents *** shall be done in such a way as will protect the recording from editing or other alterations. Immediately upon the expiration of the period of the order, or extensions thereof, such recordings shall be made available to the judge issuing such order and sealed under his directions. *** The presence of the seal provided for by this subsection, or a satisfactory explanation for the absence thereof, shall be a prerequisite for the use or disclosure of the contents of any wire or oral communication or evidence derived

therefrom."

Section 2518(10)(a) in title III provides in part:

"Any aggrieved person in any trial, hearing, or pro-
ceeding in or before any court \*\*\* may move to suppress
the contents of any intercepted wire or oral communica-
tion, or evidence derived therefrom, on the grounds
that—

(i) the communication was unlawfully intercepted;" (18
U.S.C. sec. 2518(10)(a)(1976).)

As noted above, the wording in the Federal and Illinois
statute is virtually identical in all pertinent respects.

The United States Supreme Court in *United States v.
Chavez* (1974), 416 U.S. 562, 574-75, 40 L. Ed. 2d 380,
392, 94 S. Ct. 1849, 1856, made clear that not every fail-
ure to comply fully with any requirement in title III would
render the communication unlawful under 2518(10)(a)(i).
That section has been interpreted by the Supreme Court to
require suppression "where there is failure to satisfy any
of those statutory requirements that directly and substan-
tially implement the congressional intention to limit the use
of intercept procedures to those situations clearly calling
for the employment of this extraordinary investigative de-
vice." (*United States v. Giordano* (1974), 416 U.S. 505,
527, 40 L. Ed. 2d 341, 360, 94 S. Ct. 1820, 1832.) The
Ninth Circuit Court of Appeals in *United States v. Chun*
(9th Cir. 1974) 503 F.2d 533, 541-42, interpreted *Chavez*
and *Giordano* as setting forth the following test in resolv-
ing whether failure to adhere to a statutory eavesdropping
requirement falls within the proscriptive language of sec-
tion 2518(10)(a)(i). That test requires suppression for a
post-interception failure to comply with statutory require-
ments based on a determination of whether (1) the particu-
lar safeguard is a central or functional safeguard in the
congressional scheme to prevent abuses, (2) the purpose
that the particular procedure was designed to accomplish
has been satisfied in spite of the error, and (3) the statu-
tory requirement was deliberately ignored and, if so,

whether there was any tactical advantage to be gained by the government. In determining if failure to meet the immediacy requirement falls within the proscription of section 2518(10)(a)(i), the Seventh Circuit Court of Appeals has advanced the test advocated in *Chun*. *United States v. Lawson* (7th Cir. 1975), 545 F.2d 557, 564. Accord, *United States v. Angelini* (7th Cir. 1977), 565 F.2d 469, 471, *cert. denied* (1978), 435 U.S. 923, 55 L. Ed. 2d 517, 98 S. Ct. 1487.

With respect to the above criteria, it has been consistently held that the immediate-sealing requirement is a primary safeguard in the legislative scheme (factor 1) and that the function of the post-interception procedural requirement is to preserve the integrity of the intercepted conversations and to prevent any tampering or editing of the tapes (factor 2). (*E.g., United States v. Angelini* (7th Cir. 1977), 565 F.2d 469, 471, *cert. denied* (1978), 435 U.S. 923, 55 L. Ed. 2d 517, 98 S. Ct. 1487; *United States v. Lawson* (7th Cir. 1975), 545 F.2d 557, 564.) The inquiry under factor (2) of the test thus becomes whether that purpose has been fulfilled despite failure to adhere to the immediacy requirement.

In *Lawson*, there was a virtually unexplained delay of 57 days from expiration of the interception order to presentation of the tapes to a judge for sealing. The court held that because the purpose of the immediate-sealing requirement (the integrity of the tapes) was not challenged, the wiretap evidence should not be suppressed. (545 F.2d 557, 564.) However, the same court expanded its approach when it again addressed the issue in *Angelini*. There, the court held that the initial inquiry is whether a satisfactory explanation is given for failure to adhere to the immediacy requirement. If so, the evidence is admissible. If not, the test described in *Chun* and *Lawson* is applied to determine if section 2518(10)(a)(i) is violated. Thus, either a sufficient excuse or compliance with the three-step test of *Chun* is

sufficient for admission of the evidence, despite a violation of the immediate-sealing requirement. (*United States v. Diana* (4th Cir. 1979), 605 F.2d 1307, 1313, *cert. denied* (1980), 444 U.S. 1102, 62 L. Ed. 2d 787, 100 S. Ct. 1067.) In *Angelini,* the court found that despite delays of nine to 26 days, the tapes should not be suppressed. It found that there was a satisfactory explanation for the delay. The court also concluded that the congressional purpose underlying the sealing requirement was satisfied inasmuch as there was no substantial question raised about the integrity of the tapes. The court stated:

> "The district court's unchallenged finding was that there was 'no tampering whatsoever.' That conclusion goes a long way towards satisfying the *Lawson* inquiry referred to above. As we have noted, *Lawson* approved a refusal to suppress, even in the face of an inadequate explanation for a sealing delay longer than those before us here, because the integrity of the tapes was not challenged." *United States v. Angelini* (7th Cir. 1977), 565 F.2d 469, 473.

The Third, Fourth, Fifth, and Eighth Circuits have also held that a dispositive, or at least an important, factor in overcoming an "immediacy" violation is the absence of a challenge to the integrity of the tapes or the absence of any showing that the integrity was violated. (*United States v. Falcone* (3d Cir. 1974), 505 F.2d 478, *cert. denied* (1975), 420 U.S. 955, 43 L. Ed. 2d 432, 95 S. Ct. 1338; *United States v. Diana* (4th Cir. 1979), 605 F.2d 1307, *cert. denied* (1980), 444 U.S. 1102, 62 L. Ed. 2d 787, 100 S. Ct. 1067; *United States v. Diadone* (5th Cir. 1977), 558 F.2d 775, *cert. denied* (1978), 434 U.S. 1064, 55 L. Ed. 2d 765, 98 S. Ct. 1239; *United States v. Sklaroff* (5th Cir. 1975), 506 F.2d 837, *cert. denied* (1975), 423 U.S. 874, 46 L. Ed. 2d 105, 96 S. Ct. 142; *McMillan v. United States* (8th Cir. 1977), 558 F.2d 877.) The courts in these circuits held that although the defendant does not carry the burden of proving the tapes have been tampered with, the lack of any in-

dication that the integrity has been disturbed would play a major role in preventing suppression. Their underlying rationale is that if the integrity of the tapes is not in question, the congressional purpose behind the immediate-sealing provision (maintaining the integrity of the tapes) is fulfilled.

The Second Circuit and some State courts have adopted a more restrictive approach, in that they require the prosecution to establish a satisfactory explanation for delay in sealing. (*United States v. McGrath* (2d Cir. 1980), 622 F.2d 36; *United States v. Vazquez* (2d Cir. 1979), 605 F.2d 1269, *cert. denied* (1979), 444 U.S. 981, 62 L. Ed. 2d 408, 100 S. Ct. 484; *United States v. Gigante* (2d Cir. 1976), 538 F.2d 502; *State v. Cerbo* (1979), 78 N.J. 595, 397 A.2d 671; *People v. Washington* (1978), 46 N.Y. 2d 116, 385 N.E. 2d 593.) These courts reason that a delay in sealing is tantamount to the absence of a seal, which is permitted only in the presence of a satisfactory explanation. They have held that the question of the integrity of the tapes, in and of itself, is not sufficient to allow admission of wiretap evidence where the immediacy requirement has been violated. The underlying rationale on which this conclusion is premised is the susceptibility of recorded evidence to manipulation and the difficulty of detecting alterations. *United States v. Gigante* (2d Cir. 1976), 538 F.2d 502, 505; *People v. Washington* (1978), 46 N.Y. 2d 116, 123-24 n.7, 385 N.E.2d 593, 597 n.7. See *People v. Nicoletti* (1974), 34 N.Y.2d 249, 253, 313 N.E.2d 336, 338.

After thorough review of the literature, we believe the test promulgated in *Chun* and advanced by the Seventh Circuit in *Lawson* and *Angelini* with respect to title III is an appropriate test when applied to the corresponding sections of the Illinois act, (Ill. Rev. Stat. 1977, ch. 38, pars. 108A—7(b), 108A—9(a)(1)). With respect to the first factor of the test, we conclude at the outset, as the Federal courts have done with respect to title III, that the immedi-

ate-sealing requirement is one of the prime features of the legislative scheme for preventing wiretapping abuses.

With respect to factor (2), we note that even the courts requiring a satisfactory explanation acknowledge that the statutory purpose of the immediate-sealing requirement is to prevent tampering, alteration or editing and to preserve the integrity of the tapes. Where the issue is immediacy, we believe that if a defendant challenges the integrity and presents some evidence to support the challenge, the burden should shift to the State, similarly to when suppression of a confession is sought, and the State must show that the tapes have not been altered. Like the majority of Federal circuit courts that have addressed this issue, we conclude that the absence of any challenge to the integrity of the tapes, combined with the lack of any indication that tampering has occurred, goes a long way toward fulfilling the legislative objective. Another consideration we deem germane in determining if the legislative purpose is achieved is the length of the delay. Accord, *United States v. Diana* (4th Cir. 1979), 605 F.2d 1307, 1315, *cert. denied* (1980), 444 U.S. 1102, 62 L. Ed. 2d 787, 100 S. Ct. 1067.

In the instant case with regard to factor (2), defendant did not allege that the tapes admitted at trial were edited, altered, or constituted an inaccurate representation of the two conversations. The undercover officer testified that the tapes were in his custody until they were taken to the State's Attorney and to the issuing judge on February 8, 1978. He also testified at trial that the tapes accurately represented the entire conversations between defendant and him on January 12 and 13. There was no evidence whatsoever that any tampering had occurred, nor was there any indication that the tapes had been played for transcription, duplicated, or used in any way where there would have been an opportunity for an alteration to occur. (See *United States v. Angelini* (7th Cir. 1977), 565 F.2d 469, 474. Compare *People v. Washington* (1978), 46 N.Y.

2d 116, 385 N.E.2d 593 (technical problems with recording equipment and time spent transcribing did not suffice as reasonable explanation for sealing delay).) Under the circumstances of this case, we conclude that, despite the delay, the legislative purpose of preserving the integrity of the tapes was achieved.

With respect to factor (3) of the test, we discern neither bad faith nor any attempt to gain an advantage over defendant on the part of the State. Moreover, at the conclusion of the suppression hearing, the judge specifically found that the tapes were returned in sufficient time to be reviewed by the court and that defendant was not prejudiced in any way by the sealing delay. For all the above reasons, we hold that the tapes were properly admitted at trial.

We stress that admissibility here is premised on the facts and circumstances of this case. We asseverate that this opinion should not be interpreted as an invitation to violate the post-interception requirements in section 108A—7(b) of the Code. We realize that situations may arise where the State will argue it was unable to turn over tapes "immediately," due to the need for transcription in preparation of trial, which will raise the inquiry of whether the purpose of the statute has been fulfilled. However, with modern technology, the State should be able to make a simultaneous duplicate original recording. This should enable the State to turn over the original tape immediately following expiration of the order, thereby eliminating the need for the inquiry undertaken in this case.

Defendant next contends that he did not knowingly and intelligently waive his right to counsel where he was not properly admonished in accordance with our Rule 401(a) (73 Ill. 2d R. 401(a)). The State responds that Rule 401(a) admonishments were unnecessary because defendant did not actually waive his right to counsel.

After reviewing the record, we conclude that the total

admonishments required by Rule 401(a) were not necessary in the instant case. The record discloses that at a hearing on June 26, 1978, defendant indicated he wished to represent himself. However, at a hearing on August 22, prior to the start of trial, a lengthy colloquy ensued among defendant, his appointed counsel, and the judge.

At one point, the following exchange occurred:

"THE COURT: My plans were for [Mr. Kielian, defendant's appointed counsel,] to be stand-by counsel in this case to take over in the event that you are unable to continue with the trial.

DEFENDANT: Is he going to be stand-by?

THE COURT: That is right.

\* \* \*

DEFENDANT: He is going to assist me, in other words, Mr. Kielian?

THE COURT: Whatever you want him to do, Mr. Nieves. I have offered him to you for technical assistance, if you wish. You would like to be your own counsel and now I have watched you in these other trials. You seem to be very knowledgeable of how to conduct the trial of a case.

DEFENDANT: Yes.

THE COURT: I nevertheless always recommend a person have counsel.

DEFENDANT: Thank you.

THE COURT: Because he is disinterested, also objective. He looks at things in different ways and he is more knowledgeable of the rules of court. Things do flow smoother with Mr. Kielian rather than yourself, or some other public defender.

DEFENDANT: Well, then, at this moment, your Honor, I would like to withdraw Mr. Gerald Kielian's name as the defense witness.

THE COURT: Okay.

DEFENDANT: That means he doesn't have to be subpoenaed and I would like him to sit by me as my assistant in this case, if it is allowable by the State, Mr. Mueller.

THE COURT: Perfectly all right, Mr. Nieves."

The court then went on to explain that an unlicensed defendant cannot be "co-counseled" with a licensed member of the bar and that defendant would be the sole attorney in the case. After considerable discussion in which defendant stated he wished to represent himself, but that he wanted Mr. Kielian's assistance, the following dialogue took place toward the end of the hearing:

"THE COURT: Let me ask you this question, Mr. Nieves. Do you want Mr. Kielian to sit in the back of the courtroom as stand-by, before the Court or do you want him to sit at your counsel table?

DEFENDANT: I want him to sit at my counsel table, a technical advisor.

THE COURT: And you want to ask him some technical questions?

DEFENDANT: On and off, yes, your Honor.

THE COURT: Mr. Kielian, as I interpret the cases I think the Court has an obligation to furnish the defendant technical advice if he wishes it. This does not make you co-counsel, it doesn't give you responsibility for the case. He is making all the decisions.

However, he has a right to say to the Court, 'I would like to have somebody that I can get some advice and counsel from.' And I think I have the obligation to furnish it.

MR. KIELIAN: Fine.

THE COURT: So, you are saying that that expels you— I don't know how we are ever going to immunize anybody.

MR. KIELIAN: Judge, I don't see any distinction between being a technical advisor and co-counsel, other than I am not on the record. But he can say, you know, look on the record. He was sitting here. I asked him advice; he gave me wrong advice. I am dissatisfied with him as counsel; I am dissatisfied with him as technical advisor. They forced this technical advisor on me.

DEFENDANT: No, it is not forced. I am asking you. You are not—I am asking you *** to be my technical advisor.

THE COURT: He is requesting.

DEFENDANT: It isn't forced. I am requesting this."

Thus, defendant wished to defend himself, but at the same time sought the presence of an attorney at his counsel table who would render him assistance. We hold that under the circumstances of this case, where defendant sought and was granted the "technical assistance" of an attorney, who was present during trial, defendant need not be given all of the required admonishments under Rule 401(a). See *People v. Pittman* (1979), 75 Ill. App. 3d 683, 687-88; *People v. Lindsey* (1974), 17 Ill. App. 3d 137, 140-41.

In reaching this conclusion, we note that the record discloses defendant's awareness of the nature of the charge and the potential sentence he could receive. This was the last in a series of several related trials against defendant. In one of the other cases, defendant was charged and convicted on April 26, 1978, of unlawful delivery of less than 15 grams of a substance containing heroin (a Class 2 felony). In another case, defendant was charged and convicted on May 11, 1978, of unlawful delivery of more than 15 grams of a substance containing heroin (a Class 1 felony), the same type of offense as in the instant case. (Ill. Rev. Stat. 1977, ch. 56½, pars. 1401(a)(1), (b).) On June 26, 1978, following the above convictions, prior to sentencing, defendant sought to represent himself in those cases as well as in the instant case. Then, on July 31, before the August 22 hearing in this case, the minimum and maximum sentencing possibilities for the other two convictions, including the applicability of the extended-term provisions, and the old and new sentencing alternatives, were fully explained to defendant by the same trial judge. In addition, the record reveals defendant did not lack legal sophistication, an observation that was made by the trial court at both the June 26 and August 22 hearings. Accordingly, we find that defendant was fully cognizant of the charge, the possible penalties to be imposed, and the right to counsel.

We conclude that, under the facts and circumstances of this case, it was unnecessary for the trial court to give the specific admonishments set forth in Rule 401(a).

For the above-stated reasons, the judgment of the appellate court is reversed and the judgment of the circuit court of Will County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*