**UNITED STATES of America ex rel. Americo NIEVES, Petitioner.**

v.

**Michael O'LEARY and Neil F. Hartigan, Respondents.**

No. 84 C 734.

United States District Court, N.D. Illinois, E.D.

April 19, 1985.

Petitioner, Americo Nieves, pro se.

Marcia L. Friedl, Asst. Atty. Gen., Chicago, Ill., Neil F. Hartigan, Atty. Gen., State of Ill., for respondents.

## MEMORANDUM OPINION AND ORDER

ROVNER, District Judge.

Petitioner Americo Nieves seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Respondents are Michael O'Leary, warden of Stateville Correctional Center, Joliet, Illinois and Neil F. Hartigan, Attorney General of Illinois. This action arises out of petitioner's August, 1978 conviction for the unlawful delivery of more than 15 grams of a substance containing heroin. Petitioner is presently serving a thirty year sentence for this conviction. During both the trial and the sentencing hearing petitioner proceeded *pro se*. Petitioner argues that the writ should be granted because (1) certain tape recorded evidence introduced at trial should have been suppressed, and (2) his waiver of the right to counsel was not knowing, intelligent, and voluntary. Petitioner has exhausted his state remedies.

Presently before this Court are cross motions for summary judgment pursuant to Fed.R.Civ.P. 56. For the reasons stated below, respondents' motion for summary judgment is granted. Petitioner's motion for summary judgment is denied.

### Factual and Procedural Background

The facts are uncontroverted. Petitioner's indictment and conviction arose out of a sale of heroin to an undercover narcotics officer, Joseph Andalina, on January 13, 1978. Pursuant to a court order, officer Andalina tape recorded conversations with petitioner on January 12 and again on January 13, 1978. In these conversations, petitioner agreed to sell Andalina five to eight ounces of heroin. After officer Andalina paid petitioner $1,300 in marked currency at the agreed time and place, other officers arrested petitioner and recovered an additional 99.5 grams of heroin in bags hidden near a garbage can.

Petitioner was indicted on four charges which arose out of the series of events culminating in his arrest on January 13, 1978. Petitioner was tried separately on each charge, with the present case tried last. Prior to the first trial, petitioner's motion to suppress the tape recorded conversations on which these cases rested was denied.

In petitioner's first three trials, he was represented by Mr. Kielian of the public defender's office. On April 26, 1978, petitioner was convicted of unlawful delivery of less than 15 grams of a substance containing heroin, a Class 2 felony. On May 11, 1978, petitioner was convicted of unlawful delivery of more than 15 grams of a substance containing heroin, a Class 1 felony. Ill.Rev.Stat. ch. 56½, ¶¶ 1401(a)(1), (b) (1977). The May 11, 1978 conviction concerned the same type of offense as that in the instant case. Petitioner was acquitted of the third related charge.

On June 26, 1978, petitioner asked to proceed *pro se* in this case, and the trial court granted petitioner's request. At the time petitioner requested permission to proceed *pro se*, the judge did not recite the specific litany required under Illinois law. Ill.Rev.Stat. ch. 110A, ¶ 401(a) (1977). Instead, the court explained that petitioner would have to abide by the rules of the court, and that he could lose his right to be present in the courtroom if his conduct did not conform to the rules. The judge stated that based on the first three trials he was convinced petitioner was fully competent to conduct his defense, but he nonetheless recommended against it. The judge permitted petitioner to proceed *pro se* only after he appointed Mr. Kielian as stand-by counsel.

Prior to his trial in the instant case, petitioner was sentenced to ten years for the Class 2 felony, and thirty years for the

Class 1 felony. At the time of sentencing, the trial judge fully explained the minimum and maximum sentencing possibilities for the two convictions. Before the trial in this case, the judge again acknowledged petitioner's knowledge of courtroom procedure, but nonetheless recommended that petitioner be represented by counsel. Petitioner, with the court's encouragement, agreed to have Mr. Kielian sit at counsel table in order to act as a technical advisor. In August, 1978, petitioner was convicted in a jury trial. On October 16, 1978 petitioner was sentenced to thirty years in prison for the fourth charge.

Petitioner appealed his conviction to the Illinois Appellate Court on two grounds. First, he claimed that suppression of the recorded conversations between petitioner and an undercover police officer was required by the Illinois Code of Criminal Procedure, Ill.Rev.Stat. ch. 38, ¶ 108A–1 *et seq.* (1977), because the tapes in question were not turned over to the trial judge for sixteen days. Second, petitioner claimed that he did not effectively waive his right to counsel because the trial judge failed to give him the specific admonishments required by Illinois Supreme Court Rule 401(a). Ill.Rev.Stat. ch. 110A, ¶ 401(a) (1977).

The Illinois Appellate Court reversed and remanded petitioner's conviction holding that the admission into evidence of the tape recorded phone conversations was error.[1] *People v. Nieves,* 99 Ill.App.3d 447, 54 Ill. Dec. 695, 425 N.E.2d 560 (1981). The Illinois Supreme Court reversed on the suppression issue. *People v. Nieves,* 92 Ill.2d 452, 65 Ill.Dec. 917, 442 N.E.2d 228 (1982). In addition, the Illinois Supreme Court held that under the facts of this case, the specific admonishments of Supreme Court Rule 401(a) were not required. *Id.* In his petition for a writ of habeas corpus, petitioner again raises these issues.

*Tape Recorded Conversations as Evidence*

Petitioner claims that the tape recorded conversations between himself and Officer Andalina should have been suppressed because the tapes were obtained by unlawful eavesdropping, which he asserts was an unconstitutional search and seizure in violation of the fourth amendment. Respondents assert that petitioner has waived any constitutional claim because at no time prior to this federal habeas petition did he suggest that introduction of the tapes into evidence violated the fourth amendment. Rather, in his initial motion to suppress and subsequent state court appeals, petitioner argued only that the tapes were inadmissible because they were not turned over to the trial judge "immediately," as required by Ill.Rev.Stat. ch. 38, § 108A–7(b).

The Seventh Circuit has established that a state prisoner is barred from bringing a federal habeas petition on any claim that was not brought on direct appeal in the state court, unless the petitioner presents an adequate explanation for his action and shows an injustice which would result from the preclusive effect given to the procedural default. *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (en banc). Petitioner has made no attempt in his habeas petition to present any explanation of why he did not raise a fourth amendment claim in the state court appeals.

It is possible, however, for a federal constitutional claim to be preserved for purposes of a writ of habeas corpus without being characterized as such. A habeas petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court. *Anderson v. Harless,* 459 U.S. 4, 103 S.Ct. 276, 74 L.Ed.2d 3 (1982). The Seventh Circuit, however, has refused to apply a *per se* rule requiring a petitioner to use certain magic words to alert the state court to the constitutional ramifications of the alleged trial error. *United States ex rel. Sullivan v. Fairman,* 731 F.2d 450 (7th Cir.1984). The court identified four alternate means of doing so:

> ... where the argument presented to the state court does not: "(a) rel[y] on pertinent federal cases employing constitutional analysis; (b) rel[y] on state cases

---

**1.** The Illinois Appellate Court did not reach the waiver of counsel issue.

employing constitutional analysis in like fact situations, (c) assert[ ] the claim in terms so particular as to call to mind a specific right protected by the Constitution, ... [or] (d) alleg[e] a pattern of facts that is well within the mainstream of constitutional litigation," *Daye v. Attorney General of New York*, 696 F.2d 186, 194 (2d Cir.1982) (en banc), we cannot say that the state court has considered or had a fair opportunity to consider and correct the subsequently alleged constitutional violations.

*Id.* at 454.

■ In his argument to the state courts, petitioner never relied on federal or state cases applying constitutional analysis to similar fact situations. And neither the claim asserted nor the pattern of facts alleged bring to mind a fourth amendment violation. In his state court appeals, petitioner claimed only a violation of Ill.Rev. Stat., ch. 38, ¶ 108A-5(a)(3). Section 108A-5(a)(3) requires that immediately after the expiration of the period of a judicial order allowing eavesdropping, all recordings shall be made available to the judge issuing the order; the judge shall listen to the tapes, determine if the conversations thereon are within his order, and seal the recordings. Because there was a sixteen day delay in turning over the tapes, petitioner claimed that the State failed to adhere to the Section 108A-7 "immediacy" requirement and that this violation required suppression.

The Illinois Supreme Court extensively analyzed the immediacy issue, employing federal appellate court analysis of the similarly worded federal counterpart to the Illinois act, 18 U.S.C. § 2518(8)(a). *People v. Nieves*, 92 Ill. at 457–61, 65 Ill.Dec. at 920–22, 442 N.E.2d at 231–33. The court held that in the absence of any challenge to the integrity of the tapes, and with the lack of any indication that tampering had occurred, the legislative purpose of preserving the integrity of the tapes had been achieved, despite the delay. Because the legislative purpose had been fulfilled and because there was no evidence of bad faith by the State or prejudice to Nieves by the delay in review and sealing, the Illinois Supreme Court held that the tapes were admitted properly at trial. *Id.* at 463, 65 Ill.Dec. at 922–23, 442 N.E.2d at 233–34.

The opinion of the state supreme court indicates that it discerned no fourth amendment implications. The state court focused its inquiry on whether, despite the delay in judicial review and sealing, the tapes remained reliable evidence. Conversely, fourth amendment analysis asks whether, regardless of the reliability of the evidence, it should be suppressed as the product of an unreasonable search and seizure. The focus of the inquiry is whether the method of obtaining the evidence violated the defendant's legitimate expectations of privacy.[2] Therefore, it cannot be said that petitioner in any way alerted the state court to his fourth amendment claim.

■ This Court holds that petitioner has waived any constitutional claim with regard to the tape recorded evidence. Thus, respondents' motion for summary judgment as to petitioner's fourth amendment claim is granted.[3]

---

2. Similarly, in *United States ex rel. Sullivan v. Fairman*, 731 F.2d 450 (7th Cir.1984), the state court, presented with a claim that the trial judge erroneously denied a motion for a new trial based on newly discovered evidence, had focused on whether the state law requirements for granting a new trial had been met. The Seventh Circuit held that the state court had not been alerted to the habeas petitioner's constitutional due process claim because a due process inquiry, which looks at the question of fundamental fairness, is substantively different from that presented to the state court.

3. Even if petitioner had not waived his constitutional claim, respondents would still be entitled

to summary judgment as a matter of law. It is firmly established that sound recordings made by a government agent who is a party to a recorded conversation are not a violation of the fourth amendment. *E.g., United States v. Caceres*, 440 U.S. 741, 99 S.Ct. 1465, 59 L.Ed.2d 733 (1979); *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971); *United States v. Haimowitz*, 725 F.2d 1561 (11th Cir.), cert. denied, ―― U.S. ――, 105 S.Ct. 563, 83 L.Ed.2d 504 (1984); *United States v. Miller*, 720 F.2d 227 (1st Cir.1983), cert. denied, 457 U.S. 1107, 104 S.Ct. 984, 79 L.Ed.2d 220 (1984). Courts reason that "an individual has no legitimate expectation that the person to whom he is speaking will not relate the conversation to the legal authorities,

*Waiver of Counsel*

Petitioner claims that he proceeded to trial *pro se* without knowingly and intelligently waiving his right to counsel, in violation of the sixth and fourteenth amendments.[4] Petitioner bases his claim on the trial judge's failure to admonish him of the nature of the charge against him and the minimum and maximum sentences prescribed by law, including the impact of his prior convictions, in violation of Illinois Supreme Court Rule 401(a), Ill.Rev.Stat. ch. 110A, ¶ 401(a).[5]

The Illinois Supreme Court has held that, under the facts and circumstances of this case, it was unnecessary for the trial court to give the specific admonishments set forth in Rule 401(a). *People v. Nieves*, 92 Ill.2d at 467, 54 Ill.Dec. at 925, 442 N.E.2d at 236 (1982). The court found that the record revealed: that defendant recently had been tried on three related charges; that prior to the fourth trial, the same trial judge fully explained to defendant the minimum and maximum sentencing possibilities for the other two convictions, one of which was for a charge identical to that in the fourth trial; that the defendant did not lack legal sophistication; and that defendant sought and was granted the "technical assistance" of stand-by counsel. *Id.* at 466, 54 Ill.Dec. at 924–25, 442 N.E.2d at 235–36. On that basis, the court held that the

record disclosed that Nieves was fully cognizant of the charge, the possible penalties to be imposed, and his right to counsel. *Id.*, 54 Ill.Dec. at 925, 442 N.E.2d at 236.

■ In his state court appeals, petitioner never specifically raised a federal constitutional claim; rather, he argued solely that the trial judge violated Illinois Supreme Court Rule 401(a). The Illinois Supreme Court's interpretation of this state law is, of course, binding on this Court, absent a showing that the law conflicts with the Constitution or federal law. *Herb v. Pitcairn*, 324 U.S. 117, 125–26, 65 S.Ct. 459, 463, 89 L.Ed. 789 (1945). This Court finds, however, that petitioner preserved his federal constitutional claim for purposes of this petition for a writ of habeas corpus, although the claim was not characterized as such, because he alleged "a pattern of facts that is well within the mainstream of constitutional litigation." *Sullivan*, 731 F.2d at 454 (citation omitted).

■ It is well established in United States Supreme Court cases that

... waivers of counsel must not only be voluntary, but must also constitute a knowing and intelligent relinquishment or abandonment of a known right or privilege, a matter which depends in each case 'upon the particular facts and circumstances surrounding that case, in-

---

either by repetition or by the recording of the conversation." *Haimowitz*, 725 F.2d at 1582. *See also Caceres*, 440 U.S. at 750–51, 99 S.Ct. at 1470–71.

4. A criminal defendant's sixth amendment right to assistance of counsel is made applicable to the states by the fourteenth amendment. *Argersinger v. Hamlin*, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972); *Gideon v. Wainwright*, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).

5. Illinois Supreme Court Rule 401(a), provides:
   Any waiver of counsel shall be in open court. The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:
   (1) the nature of the charge;
   (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may

be subjected because of prior convictions or consecutive sentences; and
   (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court.
   Petitioner does not deny that he was aware of his right to have an attorney. "Although it may fairly be said that the petitioner knew of his right to appointed counsel, the trial court, in no way, informed him of and determined that he understood the nature of the charge against him or the potential sentence he could be subjected to." Petition for Writ of Habeas Corpus at 13.
   Petitioner has complained further that he was not aware that he had a right to appointed counsel other than the Public Defender. There is no such right, however, in the absence of a showing by a defendant of incompetence or conflict of interest. *United States v. Ely*, 719 F.2d 902 (7th Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 1313, 79 L.Ed.2d 710 (1984).

cluding the background, experience, and conduct of the accused.'

*Edwards v. Arizona,* 451 U.S. 477, 482, 101 S.Ct. 1880, 1884, 68 L.Ed.2d 378 (1981), *quoting Johnson v. Zerbst,* 304 U.S. 458, 464, 58 S.Ct. 1019, 1023, 82 L.Ed. 1461 (1938). The Supreme Court has set forth certain information that a defendant should be aware of in relinquishing his right to counsel:

> To be valid such waiver must be made with *an apprehension of* the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charge and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.

*Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948) (emphasis added).[6] The language of these Supreme Court guidelines indicates that there is no *per se* rule that failure to expressly inform a defendant of the nature of the charge and the minimum and maximum sentence renders his waiver of counsel unconstitutional. Rather, the constitutionality of a waiver of counsel turns on the particular facts and circumstances of the case, including defendant's awareness of the consequences of his decision. The case law bears out this conclusion.

The Seventh Circuit has held on several occasions that where a defendant was acquainted with the criminal process, had past experience with the consequences of a conviction, had knowledge of the benefits of counsel from prior criminal trials, and knew of the seriousness of the charge, that that defendant's waiver of counsel was intelligently made despite the fact that no one had expressly told him of the nature of the charge and the range of possible punishments. *Creighbaum v. Burke,* 398 F.2d 822 (7th Cir.), *cert. denied,* 393 U.S. 955, 89 S.Ct. 386, 21 L.Ed.2d 368 (1968) and *Cox v. Burke,* 361 F.2d 183 (7th Cir.), *cert. denied,*

385 U.S. 939, 87 S.Ct. 304, 17 L.Ed.2d 218 (1966).

As the court stated in *Creighbaum:* "It was reasonable for the state trial court to conclude, under the circumstances, that the petitioner fully appreciated the implications of his waiver of counsel ... without having been expressly reminded of the precise range of punishment awaiting him.... A decision to the contrary would represent a triumph of form over substance." *Creighbaum,* 398 F.2d at 823, *quoting Creighbaum v. Burke,* 287 F.Supp. 463 (E.D.Wis.1967). *Accord Aiken v. United States,* 296 F.2d 604 (4th Cir.1961).

█ In the instant case, too, the circumstances indicate that petitioner Nieves was fully cognizant of the implications of his waiver of counsel, despite the absence of an express warning of the possible sentence for the charge. He recently had gone through three criminal trials on related charges, involving many of the same witnesses and possible defenses, represented by a public defender. Thus, Nieves had knowledge of both the criminal process and the benefits of counsel. Further, petitioner was fully aware of the nature and seriousness of the charge: he had just been convicted of an identical statutory offense. At the sentencing for that charge, which was prior to his *pro se* trial, the minimum and maximum sentences were fully explained to him. As for petitioner's claim that his waiver of counsel could not be voluntary unless the trial judge explained to him whether his sentences would be concurrent or consecutive and the effect of his prior convictions on his possible sentence, at least one court has held that a defendant is not entitled to such knowledge. *Burch v. United States,* 359 F.2d 69 (8th Cir.1966). In *Burch,* the Eighth Circuit held that the petitioner was entitled to know only the range of potential penalties, which fact, as here, petitioner "undoubtedly knew." *Id.* at 73. In addition, it is interesting to note

---

**6.** The *Von Moltke* formulation is frequently cited as a starting point in waiver of counsel analysis. *See, e.g., United States v. Gaines,* 416 F.Supp. 1047, 1050 (N.D.Ind.1976) (defendant's

motion to represent self in new trial); *United States v. King,* 582 F.2d 888, 890 (4th Cir.1978) (decided on competency grounds).

**1484**

that petitioner received an identical sentence for each of his convictions for unlawful delivery of more than 15 grams of a substance containing heroin: 30 years. It would indeed be exalting form over substance to find that, because the trial judge omitted several express statements, petitioner was unaware of the nature of the charge or the range of possible sentences, and this Court declines to do so.

Furthermore, while courts in several circuits have held petitioners' waivers of counsel unconstitutional due to the trial judges' failure to inform them of sentencing possibilities, these cases are all distinguishable from the instant petition. For example, in *Evans v. Raines*, 705 F.2d 1479 (9th Cir.1983), the court held: "In the absence of *some knowledge* of Evans' understanding of the seriousness of the charges, it cannot be said that he intelligently waived counsel." *Id.* at 1480 (emphasis added). In *Evans*, there was no record evidence to indicate that petitioner would know the seriousness of the charge without an express judicial warning.

Similarly, in *Molignaro v. Smith*, 408 F.2d 795 (5th Cir.1969), the fifth circuit held that Molignaro's waiver of counsel was not knowing because there was no evidence that he was aware of the twenty year maximum sentence for his charge of child molesting. The court took care to note: "We rule only upon the specific circumstances of Molignaro's plea: his lack of education, lack of previous criminal record, and the unlikelihood that a layman would be able to anticipate the length of the sentence for the crime of which he was accused." *Id.* at 802.

In the instant case, unlike in *Molignaro* and *Evans*, the record abounds with evidence that Nieves was fully aware of his potential sentence. This Court finds that petitioner's waiver was made with an apprehension of the nature of the charge and the range of potential penalties. Therefore, this Court holds that petitioner's waiver of counsel was voluntary, knowing, and intelligent and grants summary judgment to respondents on petitioner's sixth amendment claim.

For the reasons stated above, this Court grants respondents' motion for summary judgment on Americo Nieves' petition for a writ of habeas corpus. Petitioner's motion for summary judgment is denied.